# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| CORRY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-2351-JDT-cgc |
| | ) | |
| | ) | |
| SHELBY COUNTY CRIMINAL | ) | |
| JUSTICE CENTER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER PARTIALLY DISMISSING COMPLAINT, DENYING MOTION TO APPOINT COUNSEL, AND DIRECTING THAT PROCESS BE ISSUED AND SERVED

On May 15, 2020, Plaintiff Corry Taylor, who is incarcerated at the Shelby County Criminal Justice Center (Jail) in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order on May 18, 2020, that granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On July 2, 2020, Taylor filed a motion to appoint counsel. (ECF No. 5.) He submitted attachments to his § 1983 complaint on August 14, 2020 and October 14, 2020. (ECF Nos. 6 & 7.) Taylor asserts claims for personal injury, property damage, unconstitutional conditions of confinement, excessive force, violation of

Jail policies, verbal abuse, and retaliation.  (ECF No. 1 at PageID 2.)[1]  He names the following Defendants:  the Jail; the Shelby County Sheriff, Floyd Bonner, Jr.; Officer First Name Unknown (FNU) Ewing; DRT Officer Tyrone Elliot;[2] Officer FNU Moore; Officer FNU Jones; Officer FNU Lewis; Officer FNU Cooper; Officer FNU Freeman; Captain FNU Dotson; Lieutenant FNU Varner; Sergeant FNU Martin; Officer FNU Washington; and Officer FNU Harris.  (*Id*. at PageID 1, 2, & 4.)  Taylor seeks $1 million in damages. (*Id*. at PageID 3.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court

_____

[1] Most of Taylor's legal claims seem to echo the language in the Jail's "Personal Treatment Policy 836.06" that is cited in the complaint.  (*See* ECF No. 1 at PageID 8-9 (alleging Policy 836.06 "states Inmates/Detainees or Residents will not be subject to personal abuse, corporal punishment, personal injury, disease, property damage, or harassment").)

[2] "DRT" most likely indicates Elliot is a member of the Jail's "Detention Response Team."

accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Taylor filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

3

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

 *Official Capacity Claims and Claims Against Shelby County*:  Though Taylor has named the Jail as a Defendant, a jail is not a "person" subject to suit under § 1983.  *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) ("the Shelby County Jail is not an entity subject to suit under § 1983").  Instead, any such claims are construed as claims against Shelby County itself.  In addition, to the extent Taylor sues the Defendants in their official capacities, those claims also must be construed as claims against Shelby County, their employer.  *See Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).  Shelby County, however, may be held liable *only* if Taylor's injuries were sustained pursuant to an unconstitutional custom or policy of the County itself.  *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978).  To demonstrate such municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the

municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Taylor does not allege he has been deprived of a right because of a Shelby County policy or custom.  He instead seeks relief based on general allegations about his personal experiences of bodily and property injury at the Jail.  Therefore, Taylor does not state a claim against Shelby County or any official capacity claims against the Defendants.

*Property Damage Claims*: Taylor states he has "been subject to . . . property damage" (ECF No. 1 at PageID 2), but the complaint neither specifies the personal property to which he refers nor identifies the persons involved.[3]

The Supreme Court has held that a plaintiff's loss of property at the hands of a state employee is not a violation of due process if the state affords a means to resolve the alleged loss.  *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  *Parratt* has given rise to the "adequate state law remedy" doctrine.  A plaintiff may not maintain an action under § 1983 for a deprivation of personal property where (1) an adequate post-deprivation state remedy exists to address the claim, and (2) there are not allegations that the procedures are inadequate.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  A prisoner plaintiff "must plead and prove the inadequacy of state

---

[3] A prison grievance form attached to Taylor's complaint refers to his "radio, 1 black [illegible], 3 white shirts size XL, 1 pair of white socks, 2 pair of XL briefs" that were "wet [with] dirt and mold."  (ECF No. 1-1 at PageID 25.)  His complaint does not indicate whether this is the property at issue in his § 1983 claim.

post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995)).   The Sixth Circuit has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985) ("the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted, *see* Tenn. Code Ann. § 9-88-207, and in the absence of resort to state remedies, we do not believe that a federal court may assert jurisdiction").   *See also Hyde v. Leibach*, No. 2012 WL 1598050, at *3 (M.D. Tenn. May 7, 2012) ("Tennessee has a . . . viable remedy for losses of property caused by local officials.   Tenn. Code Ann. § 29-20-101, *et seq.* [the Tennessee Governmental Tort Liability Act]."); *McLaughlin v. Weathers*, 170 F.3d 577, 581–82 (6th Cir. 1999) (Tennessee's statutory post-deprivation remedy satisfies the requirements of due process).

Taylor does not meet this pleading burden as to his property-loss claim.   He does not address at all whether state law remedies are or are not adequate as to his putative losses.   For example, the complaint does not describe (1) what, if any, attempts Taylor made to recover the pertinent property or (2) the outcome of those efforts.   Accordingly, his allegations regarding the property loss fail to state a claim upon which relief may be granted under § 1983.   *See Benson v. Carlton*, 229 F.3d 1150 (Table), 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (affirming dismissal of *pro se* prisoner's claim for failure to

allege inadequate state remedy).  He insufficiently alleges a claim to relief for property loss.

*Conditions of Confinement Claims*:  Taylor's claims regarding his conditions of confinement arise from two sets of facts.

(a) *Cell Leak*:  Taylor alleges he "slipped and fell in some water jumping off my bunk" on February 13, 2020.  (ECF No. 1 at PageID 2.)  He and his cellmate had "ask[ed] the pod officers to put a maintenance/work order in for the water leak several times before the incident occurred."  (*Id*. at PageID 5-6.)

Taylor's argument is construed as a claim under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).  This proscription on cruel and unusual punishment encompasses an inmate's right to personal safety.  *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982).  An Eighth Amendment claim consists of both objective and subjective components.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious."  *Id.* at 834.  To satisfy this prong, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The Eighth Amendment's subjective component requires a prisoner to demonstrate that officials acted with the requisite intent, that is, that they had a "sufficiently culpable

state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. "[T]he prison official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837-38.

As to the objective prong here, Taylor's slip and fall allegation does not meet the requisite showing. As another district court in this circuit has explained:

> Federal courts have routinely held that wet and slippery prison floors, while potentially hazardous, do not amount to the denial of the minimal civilized measure of life's necessities. *See, e.g., Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (holding that "slippery floors constitute a daily risk faced by members of the public at large" and do not amount to cruel and unusual punishment); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding that wet prison floors did not create a sufficiently serious condition to violate the Eighth Amendment, and noting that "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); *Denz v. Clearfield County*, 712 F. Supp. 65, 66 (W.D. Pa. 1989) (finding no Eighth Amendment violation based on slippery floor in prison cell); *Mitchell v. West Virginia*, 554 F. Supp. 1215, 1216-17 (N.D. W. Va. 1983) (no Eighth Amendment violation based on slippery floor in prison dining hall).

*Stubl v. Baraga Maximum Corr. Facility*, No. 2:08-CV-10, 2008 WL 4813403, at *6 (W.D. Mich. Oct. 30, 2008) (report and recommendation adopted by the district court). *Accord Mills v. C.C.A.*, No. 1:10-0015, 2010 WL 5155478, at *4 (M.D. Tenn. Dec. 14, 2010) ("Courts have regularly held that slip and fall accidents do not give rise to federal causes of action") (report and recommendation), *adopted*, 2011 WL 13552 (M.D. Tenn. Jan. 4,

2011). "[W]et and slippery prison floors, while potentially hazardous, do not amount to the denial of the minimal civilized measure of life's necessities." *Hemingway v. Castillo*, No. 12-2390, 2013 WL 1314424, at *4 (W.D. Tenn. Mar. 28, 2013) (internal citations omitted). The water-related slip and fall here is not sufficiently serious for Eighth Amendment analysis.

As for the subjective prong, Taylor's claim is similarly deficient. He alleges only that "pod officers" negligently failed to respond to his maintenance request. (ECF No. 1 at PageID 5.) He does not assert that any named Defendant knew water was on the floor before his fall but did nothing. He also does not allege that any Defendant had sufficient time or was close enough to take action to prevent the accident from occurring.

For these reasons, Taylor does not state a sufficient conditions of confinement claim regarding the leak-related accident in his cell.

(b) *Cold Food*: Taylor alleges the food at he Jail is cold. (ECF No. 1 at PageID 8.) He has grieved his displeasure with the prison food. (ECF No. 1-1 at PageID 22.)

Courts have held that prisons should supply "nutritionally adequate food that is prepared and served under conditions which do not present an *immediate* danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir.1980), *cert. denied,* 450 U.S. 1041 (1981) (emphasis added). "Cold food does not pose such a danger, and thus does not constitute the deprivation of a necessity of life." *Prophete v. Gilless*, 869 F. Supp. 537, 538-39 (W.D. Tenn. 1994). *Accord Strauss v. Ray*, 221 F.3d 1336 (Table), 2000 WL 875690, at *2 (6th Cir. June 19, 2000) (claim alleging

cold meals "lacks an arguable basis in law because his allegations, while unpleasant, do not amount to a constitutional deprivation"). Therefore, Taylor's allegations of cold food do not rise to the level of "extreme deprivations" required to violate the Constitution.

*Claims Concerning Violations of Jail Policies*: Taylor alleges Defendants violated "Personal Treatment Policy 836.06" that prohibits "personal abuse, corporal punishment, personal injury, disease, property damage, or harassment." (ECF No. 1 at PageID 9; *see also* ECF No. 6 at PageID 38 (the Sheriff's Office and Jail "do[] not follow their own guidelines").)

In a later attachment to the complaint, Taylor attaches two other grievances and states he wants "both these incidents to be added to my case." (ECF No. 7 at PageID 41.) A grievance filed on August 22, 2020, complained about a fire the day before in "4 Kilo Pod" and stated he "almost choked to death from all the smoke." (ECF No. 7 at PageID 43.) He asserted there is no sprinkler system or smoke detector in 4 Kilo Pod or in his cell. (*Id.*) Taylor contended the fire happened because the Jail failed to follow its own Policies. (*Id.*) In the other grievance, filed on September 20, 2020, Taylor contended he was stabbed by another inmate because the Jail failed to adequately supervise the prisoners, as required by Policy 836.03.

Taylor's contentions do not state a claim of constitutional deprivation. An inmate's allegation that jail officials failed to follow a correctional facility's administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a liberty

interest protected by the Due Process Clause.  *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)), *aff'd*, 1999 WL 1045243 (6th Cir. 1999).  Section 1983 does not provide a remedy for violations of state laws or regulations.  *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994).  *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983.  Taylor therefore does not have a constitutional right to Defendants' observance of Jail policies, including Policy 836.03 and 836.06.

<u>*Claim of Verbal Abuse*</u>:  After Taylor passed out on February 7, 2020, because of high blood pressure, Officer Ewing allegedly "threatened to kill me and called out my home address."  (ECF No. 1 at PageID 5.)  Ewing allegedly did so because he was "upset about calling a code white" for Taylor's medical emergency.  (*Id.*)  Taylor grieved the matter. (ECF No. 1-1 at PageID 14-15 & 23-24.)  This incident, however personally offensive to Taylor, does not afford a basis for § 1983 relief.

Alleged threats or claims of verbal abuse generally do not satisfy the objective component of an Eighth Amendment claim.  *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "derogatory language"); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits");

*Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" (citation omitted)); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts" (citation omitted)); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment).

For these reasons, Taylor's allegation of a single instance of verbal abuse does not state a claim of constitutional magnitude.

*Excessive Force Claims*:   Taylor's excessive force claims arise from two fact patterns.  First, Taylor alleges that on February 13, 2020, at about 9:00 or 9:15 p.m., Officer Lewis came to Taylor's cell and threatened him.  (ECF No. 1 at PageID 6.)  Ten to fifteen minutes later, Lewis returned with Lt. Varner, Sgt. Martin, Officer Jones, Officer Harris, and Officer Washington.  (*Id.*)  In the grievance he filed concerning the assault, Taylor states Lewis told him, "you done played with the wrong people we bout to kick your ass and send you to the hole."  (ECF No. 1-1 at PageID 11.)  These Defendants then took Taylor to a closet on the first floor where he allegedly "was beaten and stomped by at least 5 officers."  (ECF No. 1 at PageID 6; *see also* ECF No. 1-1 at PageID 11.)  Taylor states "Sgt. Martin stood outside the door until her officers were done."  (ECF No. 1-1 at PageID

12

11.)  Taylor alleges he suffers ongoing back injuries and uses pain medications as a result of that assault.  (*Id*. at PageID 7.)

In the second incident, DRT Officer Elliot allegedly sprayed Taylor with a chemical agent "in my mouth" and eyes "just because he felt like testing his new can of spray."  (*Id.* at PageID 7; *see also* ECF No. 1-1 at PageID 17-18.)  This second alleged use of force occurred on February 14, 2020.  (*Id.*)  In his grievance filed the same day, Taylor stated Elliot came to his cell about switching bunks; Taylor told Elliot he hurt himself the day before and could not get on an upper bunk.  (ECF No. 1-1 at PageID 17.)  Elliot then ordered Taylor to face the catwalk and get on his knees, which Taylor did.  (*Id.* at PageID 17-18.)  Elliot sprayed his back with a chemical agent, which Taylor asserted "was more than enough."  (*Id.* at PageID 17)  But Elliot then "put the chemical agent in my mouth and eyes which was uncalled for [be]cause I was not posing a threat."  (*Id.*; *see also* ECF No. 1 at PageID 7.)  The chemical agent caused Taylor to pass out.  (ECF No. 1 at PageID 7; *see also* ECF No. 1-1 at PageID 17-18.)

Because Taylor is, presumably, a pretrial detainee at the Jail, his excessive force claims must be analyzed under the Fourteenth Amendment's standard of objective reasonableness, which "turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The Court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

Taylor does not particularly describe the manner in which the Defendants "beat and stomped" him during the February 13th incident (ECF No. 1 at PageID 6), but his factual allegations plausibly suggest it was not just minor force.  In any event, nothing in the complaint indicates there was a need for any force at the time, let alone the amount of force alleged by Taylor.  Defendant Lewis's alleged threat that the Officers were going to "kick [Taylor's] ass and send [him] to the hole" suggests the force was gratuitous.  The fact that Defendant Martin allegedly stood guard to ensure others did not see the event lends a surreptitious nature to the incident and suggests Martin knew what was going to occur and could have intervened to stop the assault, yet intentionally did not do so.[4]  In sum, the Court

---

[4] Even if the claim against Defendant Martin is construed as a claim of failure to protect under the Eighth Amendment, the Court finds Taylor has sufficiently alleged both the objective and the subjective components of such a claim.  *See Farmer v. Brennan*, 511 U.S. at 834.

finds Taylor has sufficiently alleged the February 13th use of force was not objectively reasonable in light of the facts and circumstances.

Similarly, Taylor has plausibly alleged Defendant Elliot's actions in spraying him with a chemical agent in his mouth and eyes was not objectively reasonable. He asserts he complied with Elliot's orders to get on his knees and had already been sprayed in the back. Taking the allegations in the complaint as true, it was thus unreasonable for Elliot to also spray the chemical agent in Taylor's mouth and eyes.

For these reasons, Taylor's Fourteenth Amendment excessive force claims will be allowed to proceed; process will be issued and served on these claims.

*Retaliation Claim*: Taylor alleges he has suffered "reprisals" and "negative consequences" for filing grievances about the matters described in his complaint. (ECF No. 1 at PageID 7.) There are several grievances attached to the complaint, including a grievance concerning Defendant Ewing's verbal abuse (ECF No. 1-1 at PageID 14-15 (Griev. No. 495288)); a grievance about the leak in Taylor's cell and his resulting fall (*id.* at PageID 24 (Griev. No. 495823)); one regarding the February 13th assault (*id.* at PageID 11-12 (Griev. No. 495825)); a grievance complaining of Defendant Elliot's use of the chemical agent (*id.* at PageID 17-18 (Griev. No. 495894)); and other grievances concerning cold food (*id.* at PageID 22 (Griev. No. 497554)), health care (*id.* at PageID 23 (Griev. No. 497312)), and property damage (*id.* at PageID 25 (Griev. No. 498358)).

The Court reviews Taylor's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a

prisoner's exercise of his First Amendment rights violates the Constitution.").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Filing a grievance is protected conduct.  *Hill v. Lappin,* 630 at 472.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Temporal proximity can provide circumstantial evidence of retaliatory motive."  *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Though Taylor generally alleges retaliation for filing his grievances (ECF No. 1 at PageID 7), he does not identify any actual causal connection between those grievances and specific adverse actions taken against him.  He does not allege the Defendants who assaulted and/or sprayed him with chemical agent did so in retaliation for his grievances.  Instead, Taylor seems to allege the Jail staff was upset about having to call a "code white" medical emergency for him on two occasions only a few days apart:  on February 7, 2020,

16

because he passed out as a result of high blood pressure, and again on February 13th when he fell off his bunk because of the leak in his cell.  (*See* ECF No. 1 at PageID 5.)

The Court finds Taylor's conclusory allegations of retaliation fail to sufficiently allege a claim to relief.

*Claim Of Inadequate Prison Grievance Process*:  To the extent Taylor's complaint asserts a claim for an inadequate prison grievance procedure (*see*, *e.g.*, ECF No. 7 at PageID 41; ECF No. 8), his efforts are without merit.  There is no constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (allegation that jail staff ignored grievances did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

*Claims Against Defendants Bonner, Dotson, Moore, Cooper & Freeman*:  Taylor names Sheriff Bonner, Captain Dotson, Officer Moore, Officer Cooper, and Officer Freeman as Defendants but does not describe any wrongdoing by them.  (ECF No. 1 at PageID 1 & 2.)  Taylor states only that Dotson viewed surveillance footage related to the February 13th assault but does not ascribe any wrongful conduct to him.  (*Id.* at PageID 6.) The only mention of Defendant Moore in Taylor's documents is in a grievance filed February 13, 2020.  (ECF No. 1-1 at PageID 20 (Griev. No. 495824)).  Taylor states Moore walked him in his cell when Taylor returned from medical after being treated for the fall from his bunk.  (*Id.*)  Moore allegedly told Taylor "I was going  to the hole because he and [Sgt.] Martin [were] sick of me."  (*Id.*)  Taylor does not, however, allege Moore participated

in the assault that occurred later that day or engaged in any other actual wrongdoing.  These brief mentions of Dotson and Moore do not suffice to state a claim under § 1983.

Other than listing them as parties, the complaint is completely silent about the basis for any claims against Defendants Bonner, Cooper, and Freeman.  When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Taylor also cannot sue Defendants Bonner or Dotson merely because of their respective positions as Sheriff of Shelby County and Captain at the Jail.  Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Moreover, a failure to take corrective action in response to an inmate grievance generally does not supply the necessary personal involvement for § 1983 liability.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *see also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

For these reasons, Taylor fails to state any claim on which relief may be granted against Defendants Bonner, Dotson, Moore, Cooper, and Freeman.

<u>*Motion to Appoint Counsel*</u>:  In Taylor's motion for appointment of counsel, he states that he needs an attorney "due to the complexity of the case." (ECF No. 5 at PageID

36; *see also* ECF No. 6 at PageID 38.)  Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel."  However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . .").  Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).

"In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself.  This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted).  Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).  "[I]n contrast to criminal defendants, civil litigants unable to afford counsel cannot ordinarily" have counsel appointed unless "there is a risk of loss of liberty, as in mental commitment or juvenile delinquency proceedings." *Iannaccone v. Law*, 142 F.3d 553, 556 (2d Cir. 1998), *cited in Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).

Though Taylor asserts this is a complex case, the Court finds he has not identified any "exceptional circumstances" warranting appointment of counsel at this time. He has shown himself to be capable of litigating this case on his own. The motion for appointment of counsel is DENIED.

*Conclusion*:  For the above-stated reasons, except for his claims of excessive force, all of Taylor's claims are hereby DISMISSED for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); this dismissal includes all claims against the Jail/Shelby County and all claims against Defendants Bonner, Dotson, Ewing, Moore, Cooper, and Freeman. Taylor's Fourteenth Amendment excessive force claims will proceed: specifically, the claims involving the alleged February 13, 2020, assault by Defendants Lewis, Varner, Martin, Jones, Harris, and Washington, and the claims involving the February 14, 2020, incident in which Defendant Elliot allegedly sprayed a chemical agent in Taylor's mouth and eyes.

It is ORDERED that the Clerk shall issue process for Defendants Officer FNU Lewis; Lt. FNU Varner; Sgt. FNU Martin; Officer FNU Jones; Officer FNU Harris; Officer FNU Washington; and DRT Officer Tyrone Elliot and deliver that process to the U.S. Marshal for service. Service shall be made on the Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Taylor shall serve a copy of every subsequent document he files in this case on the attorneys for the Defendants or personally on any Defendant

who is unrepresented.  Taylor shall make a certificate of service on every document he files.  Taylor shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[5]

Taylor is reminded that he must promptly notify the Clerk, *in writing*, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.